UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNA HAI NGUYEN,<br><br>      Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br><br>      Defendant. | Case No. SA CV 12-1837-PJW<br><br>MEMORANDUM OPINION AND ORDER |

I.

INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying her application for Disability Insurance Benefits ("DIB"). She claims that the Administrative Law Judge ("ALJ") erred when he failed to properly consider the medical evidence and when he rejected her testimony. For the reasons explained below, the Court concludes that the ALJ erred and remands the case to the Agency for further proceedings.

II.

SUMMARY OF FACTS AND PROCEEDINGS

In February 2008, Plaintiff applied for DIB, alleging that she had been unable to work since March 2007, due to disorders of the muscle, ligament, and fascia, as well as carpal tunnel syndrome, headaches, and neck and shoulder pain. (Administrative Record ("AR") 54, 144). Her application was denied initially and on reconsideration and, thereafter, she requested and was granted a hearing before an ALJ. (AR 61-66, 67-71, 73-74). On April 13, 2010, she appeared at the hearing with counsel and testified. (AR 34-53). On September 24, 2010, the ALJ issued a decision, finding that she was not disabled. (AR 18-28). Plaintiff appealed to the Appeals Council, which denied her request for review. (AR 1-5). This appeal followed.

III.

ANALYSIS

A.  The ALJ's Conclusion that Plaintiff Could Perform her Past Work

In her first claim of error, Plaintiff complains that, although the ALJ claimed to credit the opinion of her treating doctor, he effectively rejected that opinion when he determined that Plaintiff could perform her past work as a seamstress. (Joint Stip. at 3-9). For the following reasons, the Court agrees.

Plaintiff worked as a seamstress for a number of years. She claims that, as a result of that work, she developed excruciating pain in her thumbs as well as carpal tunnel syndrome in her wrists, which prevents her from using her arms and hands. She filed a workers' compensation case as a result. Dr. Deshmukh treated her in connection with that case. (AR 121-39, 242-93, 308-18.) He ultimately concluded that Plaintiff was precluded from "repetitive gripping, grasping, and

2

torquing." (AR 251.) The parties agree that "repetitive" in this context means that Plaintiff is capable of gripping, grasping, and torquing no more than 50% of the time. (Joint Stip. at 3, 14.) Plaintiff argues that, because of this limitation, she cannot perform her prior work as a seamstress, which requires her to grip, grasp, and torque, frequently, meaning up to two-thirds of the workday. (Joint Stip. at 5.) The Agency argues that since the vocational expert testified that her testimony was consistent with the Dictionary of Occupational Titles ("DOT") the Court need not and should not inquire further. (Joint Stip. at 6.)

The Agency's argument is rejected. The fact that the vocational expert testified that her testimony was consistent with the DOT is not dispositive, particularly where, as here, it is plain that her testimony was in error. Plaintiff cannot perform her past work as a seamstress, which requires her to grip, grasp, and torque up to two-thirds of the day if she is only capable of performing those actions one-half of the day. See Social Security Ruling 83-10 ("frequent is defined as existing more than 1/3 of the workday up to 2/3 of the work day); and DOT No. 785.361-014 Garment Fitter ("Fingering: Frequently - Exists from 1/3 to 2/3 of the time"). On remand, the ALJ should address this contradiction.[1]

---

[1] The Court agrees with the Agency that this issue could have and should have been raised by Plaintiff's then-counsel at the administrative hearing. But the Court is not inclined to penalize Plaintiff for her former counsel's oversight.

B.   The ALJ's Rejection of Dr. Miller's Opinion

In November 2009, Plaintiff went to see Dr. Lawrence R. Miller, a pain specialist and medical evaluator, for a "state qualified medical examination" in connection with her workers' compensation case. (AR 397-413.) Based on this examination, Dr. Miller concluded that Plaintiff could perform semi-sedentary duties, but was "restricted from any gripping, grasping . . . [or] lifting with the upper extremities" and "should avoid bilateral finger manipulation, gripping, grasping, wrist torquing and fine finger movement." (AR 412). The ALJ rejected Dr. Miller's opinion because it was inconsistent with EMG/nerve conduction studies--which Dr. Miller wanted to see to confirm his views but never did--and was contradicted by Dr. Deshmukh's opinion. (AR 25.) The ALJ also relied on the fact that Plaintiff did not exhibit atrophy in her arms and that Dr. Miller saw her only once. (AR 25.) In her second claim of error, Plaintiff argues that the ALJ erred in discounting Dr. Miller's opinion. (Joint Stip. at 9). For the reasons explained below, this argument is rejected.

ALJs are tasked with resolving conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). In doing so they may accord greater weight to a treating physician--who was hired to cure the claimant and has more opportunity to know and observe her--than an examining physician, who sees the claimant only once for the sole purpose of rendering an opinion in the context of legal proceedings. *Id.* at 1041-42; *see also*, 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of

your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations").

Dr. Miller was not Plaintiff's treating physician and examined her only once. (AR 397-413.) He believed that Plaintiff was extremely limited. But Plaintiff's treating physician, Dr. Deshmukh, who saw her numerous times over a 15-month period and treated her for her condition, opined that Plaintiff was not so limited. The ALJ discounted Dr. Miller's opinion and accepted Dr. Deshmukh's for that reason. (AR 25.) The ALJ was entitled to do so. See, e.g., Smolen v. Chater, 80 F.3d 1273, 1285-86 (9th Cir. 1996) (holding treating physicians' opinions "are given greater weight than the opinions of other physicians."). As such, this finding will be affirmed.

The ALJ also relied on the fact that Dr. Miller never reviewed electrodiagnostic studies that he noted in his report that he wanted to review. (AR 25.) This does not seem to be a valid basis for discounting Dr. Miller's opinion, however, because it appears from the report that he was not intending to use those studies to evaluate whether Plaintiff's impairment existed but rather to determine whether her impairment was caused by compression of the upper forearm or some other anomaly. (AR 412.) Thus, the ALJ's reliance on this factor was not justified.

Plaintiff also criticizes the ALJ's reliance on her lack of atrophy to question Dr. Miller's opinion. She argues that this is tantamount to the ALJ acting as his own medical expert. It is not clear to the Court whether an ALJ's reliance on a lack of atrophy is a proper basis for rejecting a doctor's testimony where, as here, none of the doctors in the case explained that a lack of atrophy

established greater capability, thus undermining Dr. Miller's opinion. Arguably, common sense and common experience suggest that, if someone is so disabled by pain that she is unable to use her arms for an extended period of time, she would experience atrophy. But it appears that a medical expert would be necessary to explain the correlation before an ALJ could rely on this as a basis for rejecting a doctor's opinion. However, the Court need not and does not resolve this issue because the ALJ's decision to accept the treating doctor's opinion over the examining doctor's opinion is enough on its own to uphold the decision.

C. <u>Consideration of Plaintiff's Cervical Spine Impairment</u>

In Dr. Miller's report, he recounts the results of an MRI report of Plaintiff's cervical spine that he reviewed in formulating his opinion. (AR 402-03.) In Plaintiff's view, this report documents that she has a cervical spine impairment, which the ALJ and the other doctors did not properly consider because only Dr. Miller reviewed the MRI report. (Joint Stip. at 18-19.) For the following reasons, the Court does not agree.

Despite having never seen the MRI or the MRI report, the ALJ accepted the report's findings as summarized by Dr. Miller and found that Plaintiff suffered from degenerative disc changes of the cervical spine and that this condition amounted to a severe impairment. (AR 20, 26.) In doing so, the ALJ adopted the MRI report's findings that Plaintiff exhibited "degenerative disc changes at multiple levels including a 3.2 mm disc protrusion at C5-6 and C4-5 and 2.2 mm disc protrusions at C3-4 and C6-7," citing Dr. Miller's report. (AR 26.) Thus, Plaintiff's argument that the ALJ failed to properly consider

6

1 | her cervical spine impairment described in the MRI report contained in
2 | Dr. Miller's report is not supported by the record.
3 |      Plaintiff argues that the ALJ was required to add a functional
4 | limitation to the residual functional capacity to address the cervical
5 | spine impairment. (Joint Stip. at 22.) Plaintiff cites no authority
6 | for this proposition nor does she set out what the additional
7 | limitation should be. As such, this argument, too, is rejected.
8 |      Finally, Plaintiff argues that the ALJ erred because he did not
9 | provide the medical expert with Dr. Miller's report or the MRI prior
10 | to the hearing. (Joint Stip. at 22-23.) As is clear from the record,
11 | however, the reason the ALJ failed to do so was because Plaintiff
12 | waited until the day of the hearing to submit Dr. Miller's report and
13 | the medical expert was not present at the hearing but testified over
14 | the telephone. (AR 36-37.) Thus, the ALJ could not have provided Dr.
15 | Miller's report to the medical expert before the hearing. As to the
16 | MRI itself and/or the report from it, Plaintiff has still not
17 | submitted either to the Agency. In fact, though it appears that it
18 | was performed in March 2008, while Plaintiff was being treated by Dr.
19 | Deshmukh--based on the fact that Dr. Miller's summary of the MRI is
20 | virtually identical to his summary of an MRI report from Dr. Adil R.
21 | Mazhar from March 2008 (AR 402-03, 409)--Plaintiff did not even share
22 | it with Dr. Deshmukh at that time. (AR 121-38, 242-93.) For these
23 | reasons, Plaintiff's objection here is overruled.

D. <u>The ALJ Properly Considered Plaintiff's Testimony</u>

25 |      In her final claim of error, Plaintiff alleges that the ALJ erred
26 | when he found that her testimony was not credible. (Joint Stip. at
27 | 24). She specifically takes exception to the ALJ's finding that she
28 | was not credible due to "a lack of objective support and physical

examination findings." (Joint Stip. at 25). For the following reasons, the Court concludes that the ALJ did not err in rejecting Plaintiff's credibility.

ALJs are tasked with judging the credibility of witnesses, including the claimant. In making these credibility determinations, they may rely on ordinary credibility evaluation techniques. *Smolen*, 80 F.3d at 1284. Where, however, a claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, the ALJ can only reject the testimony for specific, clear, and convincing reasons, *id.* at 1283-84, that are supported by substantial evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ questioned Plaintiff's veracity because she was being treated conservatively, taking 250 mg of aspirin and 550 mg of Naproxen (Aleve) each day to control her pain. (AR 27.) This is a valid reason for questioning a claimant's testimony, *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment."); *see also Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995), and is supported by the record. Plaintiff does not dispute that she was only taking over-the-counter pain medications but argues that she was just following doctor's orders and should not be penalized for that. (Joint Stip. at 26.) The record does not support this argument. Dr. Deshmukh had recommended a more aggressive modality to treat her pain, i.e., injection therapy, which Plaintiff refused. (AR 249.) Further, as Dr. Deshmukh pointed out in his final report in June 2008, Plaintiff was no longer taking any

8

medications. (AR 285.) Thus, the ALJ's decision to discount Plaintiff's claims of disabling pain because her conservative treatment was inconsistent with those claims is supported by the record and is affirmed. See *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (finding ALJ properly "inferred that Tommasetti's pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program after he stopped taking an effective medication"). This is particularly true where as here her doctor had recommended a more aggressive treatment protocol and she rejected it.

    The ALJ also relied on the fact that Plaintiff's allegations of pain "are not entirely supported by the objective evidence of the record, which reflects greater capabilities than alleged." (AR 27.) He noted that Plaintiff's physical examinations had not "revealed significant findings necessitating greater limitations" than outlined by the ALJ. (AR 27.) The record supports this finding in part and undermines it in part. Dr. Deshmukh's findings seem to suggest that Plaintiff could have done more than she claimed at the hearing. But Dr. Miller's examinations did not. Thus, the ALJ's generalized findings regarding "the objective evidence" is only valid if the Court looks only to Dr. Deshmukh's findings and ignores Dr. Miller's. It is for this reason the generalized findings are disfavored in these cases. A better approach would be to describe the objective findings being referred to that support the credibility finding and explain why others, not being relied on, are being ignored. The ALJ's failure to be specific here is not fatal to the credibility finding, however,

because his finding that Plaintiff's conservative treatment undermined her testimony is enough to uphold it.

Finally, the Court notes that the ALJ also relied on the absence of atrophy to conclude that Plaintiff was exaggerating her symptoms. The Court leaves for another day whether the ALJ's reliance on this factor was proper in light of the fact that none of the doctors explained that, had Plaintiff really been experiencing pain as severe as she claimed, she would have been unable to use her arms and would have developed atrophy.

## IV.

## CONCLUSION

For these reasons, the case is remanded to the Agency for further proceedings consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.

DATED: 12/12/13

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Social Security\NGUYEN, 1837\Memo Opinion and Order.wpd